MARY PEPE *vs.* AMERICAN SILK SPINNING COMPANY.

JULY 17, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker & Condon, JJ.

310

Moss, J. This cause was begun by a petition for review filed in the office of the director of labor on March 30, 1943 by an injured employee of the respondent, for an increase of compensation, under the workmen's compensation act, on the ground of decreased earning capacity. The petition was heard on June 9, 1943; and on the next September 4 it was granted by a decision in which the petitioner was awarded compensation for total disability from January 10, 1943, and payment of medical expenses.

The respondent appealed from this decision to the superior court, in which the cause was heard *de novo*, and a written decision was filed October 29, 1943, in which she was awarded compensation for only partial incapacity, from January 10, 1943, at the rate of $1.42 per week, and $100 for medical expenses.

On December 8, 1943 a decree was entered in accordance with this decision and included findings of fact, which were, in effect, that she had not been totally incapacitated since January 10, 1943, or sustained the burden of proving decreased earning capacity since that date; that the employer had offered and made available to her, during that period, light work, which she had been capable of doing, and that, if she had done it, she would have been entitled to partial compensation of only $1.42 per week, under article II, §11, of the workmen's compensation act, which provides for the payment of one-half of the difference between the earnings before, and those after the accident.

Meantime, on November 18, 1943, an order had been entered by the trial justice in which he appointed Dr. William A. Horan to act as an impartial medical examiner, to examine the petitioner in order to determine the nature, extent and probable duration of her injury and to file his report in the office of the clerk of the court. This report, typewritten, was made by Dr. Horan and was received by mail by the clerk, inclosed in a sealed envelope postmarked January 5, 1944.

In this report, after finding, *inter alia,* that the petitioner was unable to put her right arm behind her; that there was a prominence over the external condyle of the right humerus and that hyper-extension of the right elbow caused her to complain of pain, he concluded as follows: "I feel that this patient can resume work." Because of the nature of this report and the fact that the examination was not made until December 28, 1943, after the petitioner's claim of appeal was filed, we are of the opinion that the report gives no support to the decision or decree of the superior court.

On December 16, 1943, the petitioner filed a claim of appeal from the decree; on January 31, 1944 her reasons of appeal and the transcript of testimony were filed; and a little later the cause reached this court on the appeal, the reasons of appeal given therein being, in substance and

effect, that the decree was contrary to the law and to the evidence and the weight thereof; that there was no competent evidence upon which a finding could be made that the petitioner had not been totally incapacitated since January 10, 1943, or a finding that she had failed to prove that she had had a decreased earning capacity since that date; or a finding that the respondent had offered and made available to her, since that date and down to the time of the hearing in the superior court, light work which she had been capable of doing.

Many facts in the cause are undisputed. On December 3, 1941 the petitioner, while at work as a filler for the respondent, which work she had done for it for many years, had a fall and thereby so injured her right elbow and arm that she was totally incapacitated for work as a filler. A preliminary agreement under the workmen's compensation act was made on the next day, which provided for payment to her of compensation at the rate of $10.92 per week, upon the basis of an average weekly wage of $21.84.

On January 22, 1942 she returned to work for the respondent and was given light work, at which she earned $19 per week; but she refused to sign an agreement for partial incapacity. The respondent therefore filed a petition with the director of labor to review the preliminary agreement. This petition was heard on March 4 and on March 11, 1942 a decision was entered granting the petition and awarding her compensation for partial incapacity. That decision, in accordance with the above-cited art. II, §11, entitled her to receive weekly one-half of the difference between $21.84 and $19, viz., $1.42.

On July 13, 1942 the employer filed a second petition, to review the decision of March 11, 1942, on the ground that she was no longer incapacitated, since she was then earning wages as a filler equal to or in excess of those which she was earning at the time of her injury.

As this was not disputed, a decision granting the petition and *suspending* compensation payments under the act, as

of July 14, 1942, was rendered by the director of labor and no appeal was taken from that decision. There was no finding that she had recovered from her injury. Thereafter she continued to work for the respondent as a filler until January 3, 1943, when she stopped working and went away on a visit to her sister.

She returned to the respondent's factory on January 9 or 10 to resume her work there as a filler and was informed by its general foreman that there was no more filling work for her to do. In his testimony he explained this by saying that by leaving the employment for about a week, as she had done, she had lost her seniority rights for employment on that work; that the respondent company was turning from silk to rayon; that they had to cut down the number of employees engaged in filling and that those whose rights to employment in that work were then senior to hers could do all that work.

The petitioner testified that she had worked for the respondent for many years as a filler; that when she fell, in the course of her employment, her right elbow was badly injured and she could not work for four months. Then she went back to work at her former job, but looking after only one machine. Later she got back to her regular work and did not require the use of her right arm very much. Yet she often had to sit down and her arm pained her at times and she had treatments by the nurse twice a day. That she complained of pain while working on this job and received treatments by the nurse was corroborated by testimony by the respondent's foreman.

According to the plaintiff's testimony, when she got back after visiting her sister for about a week in January 1943, the foreman told her that she could not have a filling job any more and gave her work cutting off, with scissors, the tops and bottoms of old silk stockings, work which required the use of the muscles of her right arm. She tried it all day long, but her arm became swollen and pained her so much that she could not stand the pain. She went back

the next morning and he told her that he had nothing else for her. Three weeks before the hearing in the superior court she went back again and asked for some light work and was offered only the same job of cutting stockings.

The respondent's general foreman testified that the petitioner, by leaving of her own accord and staying away for a week or two, had lost her seniority rights and the seniority rights of another woman, who did work of filling, had become superior to those of the petitioner, who therefore could not have filling work; that he tried to persuade this other woman to yield her seniority rights to the petitioner but that she refused; that he explained the matter to the petitioner and urged her to try some other job; but that "she was very excited and walked right out" and he did not see her again until two or three weeks before the hearing.

He also testified that when she came back, after visiting her sister, he offered her a job of cutting stockings, for which the pay was about $5 a week less than for the filling job. He did not say whether or not she tried to do that job. When he was asked, on cross-examination, whether he had any work for her which did not require the constant use of her right elbow, his answer was as follows: "It is a hard question to answer, but I feel there is a job in the laps of six inches wide. If she cannot do it, she cannot do anything." He did not testify that he ever offered her that job. He testified also that he wanted the use of two hands, if he was going to pay somebody a week's pay; and that any of the jobs which he had mentioned would require the constant use of both arms and the use of both elbows.

As to the nature and extent of the petitioner's disability at the time of the hearing, there were the testimony of Dr. Vincent J. Oddo and a typewritten report of Dr. Robert C. Robinson, the physician employed by the respondent. According to Dr. Oddo's testimony he treated the petitioner from April 1, 1943 until about four days before the hearing in the superior court. On April 1 he took an x-ray

picture of her right elbow and that showed a thickening or swelling of the surface of the joint, a condition usually seen in arthritis. He stated that in his opinion she had been incapacitated from all work since April 1, 1943, because of pain and limitation of motion of her right arm.

In Dr. Robinson's report, dated March 21, 1943, he stated, among other things, that he had examined x-ray films taken of the petitioner's right and left elbows at the time of her injury and on March 15, 1943. As to one of the latter he said: "One of these films showed roughening and thickening of the margin of the external condyle of right humerus, and below this area there was a small bone spur approximately ⅛" long. The x-ray films taken at time of the injury in December 1941 and February 1942 did not show these bony changes." He gave it as his opinion that these bony changes were the result of her accident and were permanent; but he did not think that they interfered with her earning capacity. He also stated that he believed that the atrophy or smallness of the right upper arm and forearm that had resulted from her injury was of little significance as to her earning capacity.

There was also put in evidence a report by Dr. Roland Hammond, a physician who had been appointed by the department of labor as an impartial examiner of the petitioner, of an examination of her made on July 6, 1943. In this report he stated that he found on comparing x-ray films taken of her arms on that date, with those taken at the time of her accident, that there had been a definite thickening of the upper part of the right arm, at the elbow joint; and he found some tenderness to touch, a limitation of ten degrees in the flexing of her right elbow as compared with her left and a thickening of the bones at that elbow joint.

He stated also that in an x-ray examination of March 15, 1943 evidence of post-traumatic arthritis appeared; that later examinations had shown that it was progressive; that by taking films of the normal elbow it was shown that

the arthritic process involved the entire articular surface of the humerus; that there was evidence of nerve pressure in the fact that the right arm feels colder than the left; and that there was no treatment which would improve this condition, "since it is due to a change in the bony and soft tissue elements of the elbow joint."

His report ended as follows: "She should make an attempt to do some light work, but this work must not involve lifting of heavy objects nor any constant movements of the elbow. At times when she is not working she should carry the arm in a sling in order to give the elbow joint as much rest as possible. A removable splint which would fix the elbow joint but at the same time allow free movement of the hand and wrist is recommended. After all such methods have been exhausted and it is shown that she is not able to resume even light work it is probable that she is permanently incapacitated from employment."

The attorney for the respondent contended before us that under the rule laid down in the opinion of this court in *Vincent* v. *John Bowen Co.,* 69 R. I. 241, 32 A. 2d 628, the petitioner had no right to bring the present proceeding. This contention was made in the superior court, but was not sustained.

In that cause, brought under the workmen's compensation act, it was shown that the petitioner had suffered an injury to his back in the course of his employment by the respondent and had entered into a preliminary agreement with the latter for payment of compensation until terminated in accordance with the provisions of the act. Later, upon a petition being filed with the director of labor by the employer to have this agreement reviewed and terminated, on the ground that the employee's incapacity had ceased, the petition was sustained, on that ground, in a decision which was not appealed from within the time limited for an appeal.

About four years later, after the employee had spent more than three years in the Azores, he returned to this

state and brought a new petition, under the act, to have the former decision reviewed. It was held that as that decision had not been appealed from within the time limited by law, the former employee's new petition must be dismissed.

The facts are entirely different in the instant case, in which the former decision of the director of labor only *suspended* the employee's right to compensation because she was being paid by the employer wages in excess of what she was earning at the time of her injury; and there was no finding that she had recovered therefrom or that her incapacity had entirely ceased. Therefore, we find no merit in the contention of the respondent based upon the case cited.

In determining the effect to be given to the decision of the trial justice, it should be noticed that he said therein: "It is fair to say I think, as pointed out by Mr. Worrell, Dr. Robinson had a better opportunity to form an opinion in the case than Dr. Hammond had, inasmuch as Dr. Robinson had treated her over a considerably longer period of time." Mr. Worrell was the trial attorney for the respondent and we have not found any evidence in the case that Dr. Robinson had given her any treatment at all.

We have not been able to find support in the evidence for a finding by the trial justice which was, in substance and effect, that the respondent had made available to the petitioner, during the period from January 10, 1943 to the time of the hearing before him, light work of a character which she had been capable of doing. Nor have we been able to find evidence which supports his finding that the rate of wages for the work made available to her since January 10, 1943, would entitle her to partial compensation at the rate of $1.42 per week. Indeed, the attorneys for the respondent, in their brief filed with this court, state that there was no testimony that this would be a correct amount nor any mention of any figure which warranted an award of that amount. It is noteworthy that it was the same weekly amount as that awarded to her by the above-

mentioned decision of the director of labor on March 11, 1942, based on weekly earnings of $19.

After considering all the evidence in the cause and the arguments of counsel, we are of the opinion that the decision of the trial justice and the decree based thereon are not supported by any legal evidence; and that therefore the decision of the director of labor from which an appeal was taken by the respondent governs the relations of the parties until such decision and order of the director are altered in accordance with the provisions of the act.

The appeal of the petitioner is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court for entry of a decree in accordance with this opinion.

*Arthur N. Votolato,* for petitioner.

*Sisson, Fletcher & Worrell, Lee A. Worrell, Paul H. Hodge, Harry A. Tuell,* for respondent.